IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS, SPRINGFIELD DIVISION

| | | |
|---|---|---|
| DIANE YOUNGBLOOD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 16-cv-3148 |
| | ) | |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

TOM SCHANZLE-HASKINS, U.S. MAGISTRATE JUDGE:

Plaintiff Diane Youngblood appeals from the denial of her application for Social Security Disability Insurance Benefits (DIB) under Title II and Supplemental Security Income (SSI) under Title XVI of the Social Security Act (collectively Disability Benefits). 42 U.S.C. §§ 416(i), 423, 1381a and 1382c. This appeal is brought pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Youngblood filed a Motion for Summary Judgment (d/e 9). The Defendant Commissioner filed a Motion for Summary Affirmance (d/e 12). This matter is before this Court for a Report and Recommendation.

Pursuant to Local Rule 8.1(D), the parties have filed cross-motions for summary judgment. The Court may grant summary judgment motions

on grounds not raised by the parties if the Court gives the parties notice and reasonable time to respond. Fed. R. Civ. P. 56(f)(2). Pursuant to rule 56(f)(2), the Court notified the parties that the Court may recommend allowing Youngblood's request to reverse the decision of the ALJ on grounds not raise in her Motion. The Court gave the parties the opportunity to respond. Notice Under Federal Rule of Civil Procedure 45(f)(2) and Order (d/e 17) (Rule 56(f)(2) Notice), at 1, 2, 6-7. Youngblood filed a respond, but the Commissioner elected not to do so. Plaintiff's Response to the Magistrate's Order and Notice (d/e 19); Status Report (d/e 21). For the reasons set forth below and based on the issue identified in the Rule 56(f)(2) Notice, this Court recommends that the Decision of the Commissioner should be REVERSED and REMANDED.

## STATEMENT OF FACTS

Youngblood was born November 11, 1955. Youngblood secured a GED. She worked previously as an inspector, housekeeper, and cashier. She alleged that she became disabled on August 11, 2001. She filed her application for Disability Benefits on January 17, 2013. Youngblood suffered from degenerative disc disease, chronic respiratory issues, osteoarthritis, history of colon cancer (requiring a colostomy bag), anxiety,

and depression.  Certified Transcript of Proceedings before the Social Security Administration (d/e 6) (R.) 20, 52, 220.

Youngblood does not challenge the Administrative Law Judge's (ALJ) determination of her functional limitations due to her impairments.  The Court therefore will not recite the medical evidence.  See Plaintiff's Brief in Support of Her Motion for Summary Judgment (d/e 10) (Youngblood Brief), at 1-3.  Youngblood focuses her appeal on the ALJ's analysis of her past relevant work and the testimony of vocational expert Georgette Gunther.  The issue identified by the Court's Rule 56(f)(2) Notice also concerns Gunther's opinions.

In August 2013, Youngblood completed a Work History Report.  R. 316-26.  Youngblood reported that she worked as a parts inspector while employed by a temporary employment agency from April to August 2004.  The Social Security Administration FICA earning records show that Youngblood earned a total of $2,863.00.  R. 238.  The parties agree that Youngblood's work as a parts inspector did not constitute "Substantial Gainful Activity," as defined by the Commissioner's regulations and applicable rulings.  See Youngblood Brief, at 4; Motion for Summary Affirmance (d/e 13) attached Memorandum in Support of Motion for Summary Affirmance (Commissioner Brief), at 3-4, (citing 20 C.F.R. §

404.1572(b)(2)(ii)(B); Program Operations Manual System (POMS) DI 10501.015.B (Tables of SGA Earnings Guidelines and Effective Dates Based on Year of Work Activity), available at https://secure.ssa.gov/poms.nsf/lnx/0410501015, viewed May 15, 2017.

Youngblood also reported that she worked as a housekeeper from April to August 2002 and July 2007 to August 2011 at a facility called New Gardens Lodging in Fort Knox, Kentucky. R. 317. She described her duties as, "vacuum rooms, empty trash, change linen, make beds, dust, collect dirty laundry, turn mattresses, clean the entire room, mop." Youngblood stated that the maximum weight she lifted was thirty pounds. R. 324.

Youngblood reported that she worked as a clerk from February 2007 to July 2007 at a BP Service Station. R. 317. She stated her duties were, "Clean store, stock products, mop, sweep, take out the trash, inventory, stock the cooler, dip the gas tanks, count cigarettes, count the money, sell lottery tickets, fill ice in machine, clean off counter, assist customers with purchases." The maximum weight she lifted was ten pounds. R. 325.

On December 30, 2014, the ALJ conducted an evidentiary hearing. Youngblood appeared in person and with her attorney. Vocational expert Gunther also appeared. Youngblood testified about the nature of her work

as a housekeeper. She testified that she had to push a utility cart that weighed 100 pounds. She had to move furniture to clean rooms. R. 45. She said that she had to lift objects weighing thirty pounds. R. 53. She said that she could not complete cleaning the assigned rooms in time. She said she had to have "help every day the last year or so." R. 45.

Vocational expert Gunther also testified. The ALJ asked Gunther about the exertional levels of Youngblood's prior work:

> Q All right, then can you give me the claimant's past work in terms of exertional level and skill level?
>
> A Yes, housekeeper, representative DOT 323.687-014, light, unskilled with an SVP of 2. Inspector, representative DOT 559.687-074, light, unskilled with an SVP of 2. Cashier, 211.462-010, light, unskilled with an SVP of 2. . . .

R. 60.

The ALJ asked Gunther a hypothetical question about a person with Youngblood's age, education, and work experience:

> Q Okay. All right, I'm going to pose a hypothetical. I want you to assume an individual of the claimant's age, education, and work experience who would be limited to light work. No climbing up ladders, ropes, or scaffolds. Occasional climbing of ramps and stairs with occasional balancing, stooping, kneeling, crouching, and crawling. She should avoid concentrated exposure to temperature extremes and vibration. And she should avoid unprotected heights and dangerous or moving machinery. And it should be an unskilled simple routine repetitive job with only occasional interaction with supervisors, coworkers, and the public. Would the hypothetical person be capable of doing any of the claimant's past work?

R. 60-61. Gunther opined that such a person could perform the housekeeper and inspector positions.

The ALJ then modified her question to include a limitation for fast-paced or high production quotas. The ALJ, Gunther, and Youngblood engaged in the following colloquy on this point:

> Q  If I were to add to that hypothetical that she would also need to have no fast paced or high production quotas could she do her past relevant work?
>
> A  I would have to ask her if she had quotas that she had to meet during the day for her inspector position.
>
> ALJ:  Did you have quotas that you had to meet in your inspector position, ma'am?
>
> CLMT:  I don't really remember, I don't think so.
>
> VE:  She would be able to do the inspector job then and the housekeeper; did she have a certain number of rooms that she had to complete within a certain amount of time?
>
> CLMT:  Yes, and I couldn't get it done.
>
> VE:  Okay, not the housekeeper position.

R. 61. Gunther opined that her opinions were consistent with the Department of Labor's Dictionary of Occupational Titles (DOT). R. 62.

Youngblood's attorney asked Gunther about the postural requirements of the housekeeping job:

> Q . . . The housekeeping job, that requires just occasional posturing, stooping, kneeling, crouching, and so on?
>
> A Occasional or none. I'm looking at three different DOT codes, I gave a representative code, I'm looking at three different DOT codes at the light level and it's all occasional or never.
>
> Q Okay.
>
> A For climbing, balancing, stooping, kneeling, crouching, and crawling.

R. 63.

> The ALJ asked Gunther about the housekeeping job again:
>
> Q Ms. Gunther, if I am finding that no fast paced or high production quotas would be similar to work in a factory or production work would that still eliminate the housekeeping job?
>
> A I'm sorry, can you repeat that question
>
> Q When I include no fast paced or high production quotas, if I'm referring to the type of work that one would find in a factory or an assembly line as high production quotas or fast paced?
>
> A Right.
>
> Q Would that still, that limitation still preclude her housekeeping job?
>
> A No, it would not.

R. 64-65.

On January 8, 2015, the ALJ issued her decision. R. 18-28. The ALJ followed the five-step analysis set forth in Social Security Administration Regulations (Analysis). 20 C.F.R. §§ 404.1520, 416.920. Step 1 requires

that the claimant not be currently engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(b). If true, Step 2 requires the claimant to have a severe impairment. 20 C.F.R. §§ 404.1520(c), 416.920(c). If true, Step 3 requires a determination of whether the claimant is so severely impaired that she is disabled regardless of her age, education and work experience. 20 C.F.R. §§ 404.1520(d), 416.920(d). To meet this requirement at Step 3, the claimant's condition must meet or be equal to the criteria of one of the impairments specified in 20 C.F.R. Part 404 Subpart P, Appendix 1 (Listing). 20 C.F.R. §§ 404.1520(d), 416.920(d). If the claimant is not so severely impaired, the ALJ proceeds to Step 4 of the Analysis.

Step 4 requires the claimant not to be able to return to her prior work considering her age, education, work experience, and Residual Functional Capacity (RFC). 20 C.F.R. §§ 404.1520(e) and (f), 416.920(e) and (f). If the claimant cannot return to her prior work, then Step 5 requires a determination of whether the claimant is disabled considering her RFC, age, education, and past work experience. 20 C.F.R. §§ 404.1520(g), 404.1560(c), 416.920(g), 416.960(c). The claimant has the burden of presenting evidence and proving the issues on the first four steps. The Commissioner has the burden on the last step; the Commissioner must

show that, considering the listed factors, the claimant can perform some type of gainful employment that exists in the national economy. 20 C.F.R. §§ 404.1512, 404.1560(c); Weatherbee v. Astrue, 649 F.3d 565, 569 (7th Cir. 2011); Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 352 (7th Cir. 2005).

The ALJ determined that Youngblood met her burden at Steps 1 and 2. She determined that Youngblood had not engaged in Substantial Gainful Activity since August 11, 2011, and she suffered from the severe impairments of degenerative disc disease, chronic pulmonary disease, osteoarthritis, constipation, hypothyroidism, hyperlipidemia; history of colon cancer, anxiety, and depression. R. 20. At Step 3, the ALJ found that Youngblood's impairments or combination of impairments did not meet or equal a Listing. Youngblood does not challenge these findings on appeal.

At Step 4, the ALJ found that Youngblood had the following RFC:

> 5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform "light" work, as defined in 20 C.F.R. 404.1567(b) and 416.967(b), except for the following: The claimant cannot climb ladders, ropes, or scaffolds. She can perform no more than occasional climbing of ramps and stairs; and occasional balancing, stooping, kneeling, crouching, and crawling. She must avoid all exposure to unprotected heights and dangerous moving machinery, as well as concentrated exposure to temperature extremes and vibration. In addition, the claimant would need an unskilled, simple, routine, repetitive job with only

occasional interaction with supervisors, coworkers, and the public; and with no fast-paced or high production quotas.

R. 22-23. Youngblood does not challenge this finding on appeal.

At Step 4, the ALJ determined that Youngblood could perform her prior work as a parts inspector and housekeeper "as actually and generally performed." The ALJ relied on Gunther's opinions to reach these conclusions. The ALJ noted that Gunther initially opined that a person with Youngblood's RFC could not do the housekeeper job because of the limitation on fast-paced work or high production quotas. After the ALJ explained that the term "fast-paced or high production quotas" meant, "the type of work associated with factory or assembly-line employment," Gunther opined that the person could perform the housekeeping job. R. 27.

The ALJ concluded at Step 4 that Youngblood was not disabled because she could perform her past relevant work. R. 27-28.

Youngblood appealed the decision of the ALJ. On April 1, 2016, the Appeals Council denied her request for review. The decision of the ALJ became the final decision of the Defendant Commissioner. R. 1. Youngblood then filed this action for judicial review.

ANALYSIS

This Court reviews the Decision of the Commissioner to determine whether it is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate" to support the decision. Richardson v. Perales, 402 U.S. 389, 401 (1971). This Court must accept the findings if they are supported by substantial evidence, and may not substitute its judgment or reweigh the evidence. Jens v. Barnhart, 347 F.3d 209, 212 (7th Cir. 2003); Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1986). This Court will not review the ALJ's evaluation of statements regarding the intensity, persistence, and limiting effect of symptoms unless the evaluation is patently wrong and lacks any explanation or support in the record. See Pepper v. Colvin, 712 F.3d 351, 367 (7th Cir. 2014); Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008); SSR 16-3p, 2016 WL 1119029, at *1 (2016) (The Social Security Administration no longer uses the term credibility in the evaluation of statements regarding symptoms). The ALJ must articulate at least minimally her analysis of all relevant evidence. Herron v. Shalala, 19 F.3d 329, 333 (7th Cir. 1994). The ALJ must "build an accurate and logical bridge from the evidence to his conclusion." Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000).

In this case, the ALJ failed to build "an accurate and logical bridge" from Gunther's opinions to her decision at Step 4 that Youngblood could perform her past relevant work as a Cleaner, Housekeeping, DOT 323.67-014 (housekeeping or housekeeper) as that job was generally performed in the national economy. The Court notified the parties that it would address this ground for deciding the Motions in the Rule 56(f)(2) Notice.

Step 4 required Youngblood to show that she could not perform her past relevant work either as actually performed or as generally performed in the national economy. 20 C.F.R. §§ 404.1520(e), 416.920(e); SSR 82-61, 1982 WL 31387, at *2 (January 1, 1982). The term "past relevant work" means a substantially similar job to her prior work, "The term [past relevant work] refers to the type of job, not idiosyncratic duties that the employer may have imposed." Hughes v. Astrue, 705 F.3d 276, 279 (7th Cir. 2013). "In other words, the ALJ need not conclude that the claimant is capable of returning to the precise job she used to have; it is enough that the claimant can perform jobs substantially like that one." Getch v. Astrue, 539 F.3d 473, 482 (7th Cir. 2008)).

The ALJ found that Youngblood could perform her past relevant work as a parts inspector and housekeeper as actually performed and as performed generally in the national economy. R. 27. The parties agree

that the ALJ erred by including the parts inspector job as past relevant work because Youngblood did not earn enough at the job to constitute Substantial Gainful Activity. The Commissioner also does not dispute Youngblood's contention that based on the RFC Youngblood could not perform her housekeeping job as she actually performed it. The RFC limited her to light work, which is defined, in part, as lifting no more than twenty pounds. 20 CFR §§ 404.1567(b), 416.967(b). Youngblood stated that she lifted thirty pounds and had to push a 100-pound cart in the housekeeping job. That activity exceeded the requirements of light work. <u>Youngblood Brief</u>, at 5-6; <u>Commissioner Brief</u>, at 5-6.[1]

The only issue is whether substantial evidence exists to support the ALJ's finding that Youngblood could perform the housekeeping job as it generally existed in the national economy. The ALJ relied on Gunther's testimony to reach this finding. R. 27.

Gunther initially testified that the person in the ALJ's hypothetical questions could not perform the housekeeping job because Youngblood testified that she had to clean a certain number of rooms in a certain time period and she could not do it. Gunther based the opinion on

---

[1] Youngblood also argues that turning a mattress requires lifting 90 pounds. Youngblood did not present that evidence to the ALJ. The Court will not consider it. See <u>Wolfe v. Shalala</u>, 997 F.2d 321, 322 n.3 (7th Cir. 1993) (This Court generally cannot consider on judicial review evidence that was not before the ALJ).

Youngblood's experience as a housekeeper.  Gunther, however, did not limit this opinion to the housekeeping job as Youngblood actually performed it.  She opined that the person could not perform the job.  That opinion indicated that Youngblood could not perform the job either as actually performed or as generally performed.

Gunther may have meant that the housekeeping job as generally performed required meeting the types of quotas that Youngblood testified she could not meet.  If so, then Gunther may have effectively opined that Youngblood could not perform the housekeeping job as generally performed in the national economy.  The ALJ did not explore whether Gunther's opinion at this point in the testimony was limited to the housekeeping job as Youngblood actually performed it or included the job as generally performed.

Gunther changed her answer to the hypothetical question when the ALJ refined the definition of fast-paced or high production work to mean assembly line factory or production work.  The change in Gunther's answer to the hypothetical question, however, did not address whether Gunther had already opined that Youngblood could not perform the housekeeping job as generally performed because the job generally included the types of quotas that Youngblood said she could not meet.  The ALJ did not

adequately address the ambiguity in Gunther's opinion concerning whether the housekeeping job as generally performed included such quotas and, if so, whether Youngblood could perform the housekeeping job as generally performed if the job included such quotas.

As a result, the ALJ failed to build a logical bridge from the evidence to her findings. See Clifford v. Apfel, 227 F.3d 863, 872 (7th Cir. 2000). The Court therefore, recommends that the ALJ's decision be reversed and the case be remanded for further proceedings before the Commissioner.

In order to assist the District Court on review, the Court will also address the ground for appeal raised by Youngblood. Youngblood argues that Gunther's opinion did not support the ALJ's decision at Step 4 because Gunther did not opine that Youngblood's housekeeping work fit within the housekeeper job DOT no. 323.687-014. Youngblood argues that the ALJ's erred in relying on Gunther's opinion to conclude that Youngblood could perform the housekeeper job as it was performed generally.

Vocational expert Gunther opined that a person with Youngblood's age, education, work experience, and RFC could perform the housekeeping job as described in the DOT. Gunther cited the DOT job description, "[H]ousekeeper, representative DOT 323.687-014, light, unskilled with an SVP of 2." R. 60. The DOT job description 323.687-014

identified the occupation of "Cleaner, Housekeeping."  The DOT described the Cleaner, Housekeeping work as:

> Cleans rooms and halls in commercial establishments, such as hotels, restaurants, clubs, beauty parlors, and dormitories, performing any combination of following duties: Sorts, counts, folds, marks, or carries linens. Makes beds. Replenishes supplies, such as drinking glasses and writing supplies. Checks wraps and renders personal assistance to patrons. Moves furniture, hangs drapes, and rolls carpets. Performs other duties as described under CLEANER (any industry) I Master Title. May be designated according to type of establishment cleaned as Beauty Parlor Cleaner (personal ser.); Motel Cleaner (hotel & rest.); or according to area cleaned as Sleeping Room Cleaner (hotel & rest.).

DOT, "Cleaner, Housekeeping," Dicot 323.687-014, 1991 WL 67283 (4th ed. rev. 1991).

The DOT stated that the job was light work:

> STRENGTH: Light Work - Exerting up to 20 pounds of force occasionally (Occasionally: activity or condition exists up to 1/3 of the time) and/or up to 10 pounds of force frequently (Frequently: activity or condition exists from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly (Constantly: activity or condition exists 2/3 or more of the time) to move objects. Physical demand requirements are in excess of those for Sedentary Work. Even though the weight lifted may be only a negligible amount, a job should be rated Light Work: (1) when it requires walking or standing to a significant degree; or (2) when it requires sitting most of the time but entails pushing and/or pulling of arm or leg controls; and/or (3) when the job requires working at a production rate pace entailing the constant pushing and/or pulling of materials even though the weight of those materials is negligible.

Id.

Youngblood's attorney asked Gunther about the postural requirements of the housekeeper job to bend, stoop, kneel, or crawl. Gunther opined that the job had occasional to no postural requirements:

> A Occasional or none. I'm looking at three different DOT codes, I gave a representative code, I'm looking at three different DOT codes at the light level and it's all occasional or never.

R. 63.

Youngblood argues that Gunther did not opine that Youngblood's housekeeping work fit within the Cleaner, Housekeeping job, DOT no. 323.687-014. She argues that Gunther opined that her prior work did not fit any category in the DOT. She argues that Gunther opined that her work fit parts of three DOT job descriptions, and as such, was a "composite job."

A "composite job" is a job that has significant elements of two or more occupations. As such, the job does not fit into any DOT job description. If a job is a composite job, then the ALJ at Step 4 may only consider whether the person could perform the past relevant work as actually performed. The ALJ may not consider whether the person could perform the past relevant work as performed generally in the national economy. See SSR 82-61, 1982 WL 31387, at *2; POMS DI 25005.020(B), available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0425005020, viewed May 15, 2017. Youngblood argues that the ALJ erred in considering at Step 4

whether she could perform her past relevant work as a housekeeper as it was performed generally in the national economy because it was a composite job.

Youngblood is factually incorrect. Gunther did not opine that Youngblood's past work as a housekeeper had significant elements of two or more occupations. Gunther opined that Youngblood's past relevant work as a housekeeper fit the Cleaner, Housekeeping occupation, DOT 323.687-014. R. 60. The DOT description of the duties of a Cleaner, Housekeeper are consistent with Youngblood's description of her prior housekeeper job and supports Gunther's opinion that her housekeeper job was that type of job, and so, was her past relevant work. Hughes, 705 F.3d at 279; Getch, 539 F.3d at 482.

Gunther opined that the DOT job classification 323.687-014 was representative of the three job classifications into which Youngblood's past work would fit. Gunther did not opine that Youngblood's work did not fit into any DOT occupation. Youngblood is incorrect.

As explained above, however, Gunther's opinion was ambiguous regarding whether Youngblood could perform the housekeeping job as performed generally in the national economy. The ALJ's reliance on the ambiguous opinion was error that should require reversal and remand.

THEREFORE, THIS COURT RECOMMENDS that Plaintiff Diane Youngblood's Motion for Summary Judgment (d/e 9) be AFFRIMED, the Defendant Commissioner's Motion for Summary Affirmance (d/e 12) be DENIED, and the decision of the Commissioner be REVERSED and REMANDED pursuant to sentence 4 of 42 U.S.C. § 405(g).

The parties are advised that any objection to this Report and Recommendation must be filed in writing with the Clerk of the Court within fourteen days after service of a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file a timely objection will constitute a waiver of objections on appeal. See Video Views, Inc. v. Studio 21, Ltd., 797 F.2d 538, 539 (7th Cir. 1986). See Local Rule 72.2.

ENTER: September 8, 2017

                          *s/ Tom Schanzle-Haskins*
                UNITED STATES MAGISTRATE JUDGE